# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 7, 2022     Decided December 20, 2022

No. 22-5018

UNITED STATES OF AMERICA,
APPELLEE

v.

THREE SUMS TOTALING $612,168.23 IN SEIZED UNITED STATES CURRENCY,
APPELLEE

AJC TRADING FZC, ET AL.,
APPELLANTS

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-00130)

*Keith B. Lively* argued the cause and filed the briefs for appellants.

*Kevin J. Barber*, Attorney, U.S. Department of Justice, argued the cause for appellee United States of America. With him on the brief was *Joseph Palazzo*, Deputy Chief, Special Financial Investigations Unit.

2

Before: HENDERSON and WALKER, *Circuit Judges*, and TATEL, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Appellants are foreign companies that allegedly launder money for Kassim Tajideen, a prominent Hezbollah financier and specially designated global terrorist (SDGT). The United States seized three sums totaling $612,168.23 belonging to Appellants and filed the instant forfeiture action in order to keep the funds permanently. When no one claimed the funds for more than a year after the government gave notice of the forfeiture action, the government moved for a default judgment. Apparently realizing their mistake, Appellants belatedly attempted to file claims to the seized funds to prevent the district court from ordering forfeiture. The court struck Appellants' filings as untimely and entered default judgment in favor of the government. After the court denied Appellants' late reconsideration motion, they filed the instant appeal. As detailed *infra*, we affirm the district court in part and dismiss the appeal in part for lack of jurisdiction.

**I.**

The International Emergency Economic Powers Act (IEEPA) vests the President with sweeping authority to impose economic sanctions in order to "deal with any unusual and extraordinary threat, which has its source in whole or substantial part outside the United States, to the national security, foreign policy, or economy of the United States, if the President declares a national emergency with respect to such threat." 50 U.S.C. § 1701(a); *see Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 159 (D.C. Cir. 2003).

3

Following the September 11, 2001 terrorist attacks, President Bush invoked the IEEPA and declared a national emergency with respect to the threat to national security posed by terrorists. Exec. Order No. 13,224, 66 Fed. Reg. 49,079 (Sept. 23, 2001). The President designated a number of organizations and individuals as SDGTs and blocked all of their assets that were subject to the jurisdiction of the United States. *Id.* The President also empowered the United States Department of the Treasury (Treasury) to designate those who "act for or on behalf of," are "owned or controlled by," or "assist in, sponsor, or provide . . . support for" terrorists as additional SDGTs. *Id.* at 49,079–80.

In May 2009, the Treasury's Office of Foreign Assets Control (OFAC) designated Lebanese businessman Kassim Tajideen as an SDGT based on his financial support for Hezbollah. *Additional Designation of Two Individuals Pursuant to Executive Order 13224*, 74 Fed. Reg. 26,475, 26,476 (June 2, 2009). The following year, OFAC designated several companies owned and operated by Tajideen, including Ovlas Trading S.A., as SDGTs. *Designation of Three Individuals and Seven Entities Pursuant to Executive Order 13224*, 75 Fed. Reg. 80,112, 80,112–13 (Dec. 21, 2010).

In October 2017, the United States commenced administrative forfeiture proceedings against three sums totaling $612,168.23.[1] The sums were seized from U.S. banks

---

[1] "Administrative forfeiture is a device that permits the United States to determine whether property in its custody is unclaimed, and, if it is, to take ownership without the trouble and expense of court proceedings." *Small v. United States*, 136 F.3d 1334, 1335 (D.C. Cir. 1998). If no claim is filed, the property is forfeited. If a claim is filed, the government either returns the property to the claimant or files a complaint for civil forfeiture in district court in accordance with

4

in the course of attempted wire transfers to which Appellants AJC Trading FZC, SRG Industries and Ramani Distribution were parties. In October 2018, Appellants' counsel filed administrative claims on Appellants' behalf for all three sums. Accordingly, the following January, the government filed a complaint in district court, seeking civil forfeiture of the sums. *See* 18 U.S.C. § 983(a)(3)(A).

The complaint alleged, among other things, that Appellants are entities owned by, controlled by or operated for the benefit of Kassim Tajideen and Ovlas Trading. The complaint further alleged that the seized funds were traceable to unlicensed transactions that violated the IEEPA as well as the federal money-laundering statute, 18 U.S.C. § 1956(a)(2)(A), (c)(7)(D) (prohibiting engaging in transactions "with the intent to promote the carrying on" of violations of the IEEPA), and were therefore subject to forfeiture, *id.* §§ 981(a)(1)(C), 1956(c)(7)(D).

After filing the complaint, the government published notice of the lawsuit on www.forfeiture.gov for 30 consecutive days, *see* Fed. R. Civ. P. Supp. R. G(4)(a), and also provided direct notice of the lawsuit to all known potential claimants, including the three Appellants, *see id.* G(4)(b).[2] Both forms of notice announced the deadline for would-be claimants to file claims for the seized funds.[3] *Id.* G(4)(a)(ii)(B), (b)(ii)(B).

---

Supplemental Rule G of the Federal Rules of Civil Procedure. 18 U.S.C. § 983(a)(1)–(3).

   [2] Direct notice consists of "notice of the action and a copy of the complaint" sent "by means reasonably calculated to reach the potential claimant." Fed. R. Civ. P. Supp. R. G(4)(b)(i), (iii)(A).

   [3] The publication notice told putative claimants to file claims by April 2, 2019, *see* Fed. R. Civ. P. Supp. R. G(4)(a), (5)(a)(ii)(B),

5

No claim was filed. As a result, on April 8, 2020—more than a year after the claim-filing deadline elapsed—the government moved for entry of default against the three sums and all parties with an interest in them. The district court clerk of court entered the default the following day. Fed. R. Civ. P. 55(a). The government then moved for a default judgment and order of forfeiture. *Id.* 55(b). Before the district court could rule on the government's motion, however, Appellants appeared and moved to dismiss the government's complaint. With their motion to dismiss, Appellants included putative claims to the three sums.

Predictably (given that Appellants' putative claims were filed more than a year after the claims period ended), the government moved to strike Appellants' motion and claims for untimeliness, Fed. R. Civ. P. Supp. R. G(5)(a)(ii), and for failure to serve the claims on the government, *id.* G(5)(a)(i)(D). Based on Appellants' procedural deficiencies, on June 3, 2021 the district court granted the government's motion to strike and entered a default judgment in favor of the government.

The following week, Appellants notified the district court of their intent to move for amendment or reconsideration of the court's orders and, absent success, to appeal the orders. But Appellants explained that notwithstanding that intent, irreconcilable differences existed between them and their counsel, which differences would be the subject of a forthcoming motion to withdraw. And because the motion to withdraw probably would not be resolved before the expiration of the deadlines for them to seek post-judgment relief or notice an appeal, Appellants requested that the district court stay or extend those deadlines pending resolution of the motion to withdraw. The district court granted their request, ordering that

---

whereas the direct notice gave putative claimants until March 15, 2019, *see id.* G(4)(b).

6

all deadlines in the case would remain "vacated" until Monday, August 30, 2021 to allow Appellants to obtain new counsel.

Appellants did not move for post-judgment relief, notice an appeal or request another extension before August 30. But at a status conference convened on September 3, 2021, the district court ordered that all deadlines in the case would "remain vacated" until November 4, 2021. Following another status conference on November 4, the district court ordered Appellants to file their motion for post-judgment relief by no later than November 10, 2021.

On November 10—more than five months after the district court entered default judgment—Appellants moved to amend or set aside the judgment under Federal Rule of Civil Procedure 59(e). Appellants argued that their previous counsel was not properly notified of the lawsuit and that the prejudice to Appellants from granting a default judgment outweighed any prejudice that might result to the government from excusing the untimeliness of Appellants' claims.

The government contested Appellants' post-judgment motion both on the merits and on the ground that it was untimely. The district court denied the motion orally on January 11, 2022. The record does not indicate whether the motion was denied for untimeliness or on the merits. Appellants filed the instant notice of appeal the same day their motion was denied.

**II.**

The government contends that we largely lack jurisdiction over this appeal because Appellants did not file a timely notice of appeal or Rule 59(e) motion. As explained below, we agree.

7

28 U.S.C. § 2107 governs the time for filing an appeal. That statute provides that, if the United States is a party, notice of appeal must be filed within 60 days of the entry of final judgment. *Id.* § 2107(b). Under FRAP 4(a)(4)(A), however, a timely post-judgment motion, including a motion to alter or amend a judgment under Rule 59(e), tolls the notice-of-appeal deadline. Fed. R. App. P. 4(a)(4)(A)(iv) ("[T]he time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion."); *see Obaydullah v. Obama*, 688 F.3d 784, 788 (D.C. Cir. 2012) (per curiam).

Here, Appellants filed their notice of appeal within 60 days after the district court denied their Rule 59(e) motion. (Indeed, they filed it the very same day.) The government does not dispute these dates but argues that, because Appellants' Rule 59(e) motion was not filed "within the time allowed," *see* Fed. R. App. P. 4(a)(4)(A), the motion failed to extend the notice-of-appeal period. And because the motion did not extend the period, Appellants' notice of appeal was too late since it was filed more than 60 days after the district court entered default judgment in favor of the government. *See* 28 U.S.C. § 2107.

A motion to alter or amend a judgment under Rule 59(e) is timely if filed within "28 days after the entry of the judgment," Fed. R. Civ. P. 59(e), a deadline that cannot be extended, *see id.* 6(b)(2) (prohibiting extensions); *Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020). As noted, the district court here entered final judgment on June 3, 2021 but Appellants did not file their Rule 59(e) motion until November 10—months after the 28-day window had closed. Notwithstanding that the motion was timely under the district court's extensions, those extensions violated Rule 6(b)(2), which prohibits extensions.

Appellants concede as much but contend that, because both Rule 6(b)(2) and the 28-day filing deadline in Rule 59(e)

8

are non-jurisdictional claim-processing rules subject to forfeiture and equitable exceptions, their motion nonetheless triggered FRAP 4(a)(4)(A)'s tolling provision.

Only deadlines and/or timing rules with a statutory basis are jurisdictional. *Youkelsone v. FDIC*, 660 F.3d 473, 475 (D.C. Cir. 2011) (per curiam). The reason for this is simple: because "[o]nly Congress may determine a lower federal court's subject-matter jurisdiction," *Kontrick v. Ryan*, 540 U.S. 443, 452 (2004), only deadlines/timing rules created by the Congress are jurisdictional. Timing rules not created by the Congress (that is, rules that do not have a statutory basis) are non-jurisdictional claim-processing rules. *See Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 20 (2017) ("The rule of decision our precedent shapes is both clear and easy to apply: If a time prescription . . . appears in a statute, the limitation is jurisdictional; otherwise, the time specification fits within the claim-processing category." (citation omitted)). Although claim-processing rules are mandatory and must be enforced if properly invoked, they do not implicate courts' authority to adjudicate cases and are thus subject to forfeiture, waiver and equitable exceptions. *Hamer*, 138 S. Ct. at 17; *Mobley v. CIA*, 806 F.3d 568, 577 (D.C. Cir. 2015).[4]

We have held that the timing rules in Rule 59(e) and Rule 6(b)(2) are simple claim-processing rules. *Mobley*, 806 F.3d at 577; *Obaydullah*, 688 F.3d at 789. Appellants are thus correct that, if the government forfeited its objection to the timeliness of their Rule 59(e) motion or if an equitable exception permits us to excuse the motion's untimeliness, the motion *could* extend the appeal period and their notice of appeal could have

---

[4] The Supreme Court has "reserved whether mandatory claim-processing rules may be subject to equitable exceptions," *Hamer*, 138 S. Ct. at 18 n.3, but we have determined that they may be, *see, e.g.*, *Mobley*, 806 F.3d at 577.

9

been timely. Appellants, however, have not shown that the government forfeited its objection to the timeliness of Appellants' Rule 59(e) motion.[5] Nor have they shown that there is an applicable equitable exception.

We begin with forfeiture. Appellants contend that the government forfeited its objection to the timeliness of their Rule 59(e) motion because the government did not oppose their requests for deadline extensions or challenge the timeliness of their motion until it filed its brief in opposition. But that contention does not have support in the trial court record. Rather, the record reflects that the government did oppose Appellants' requested extension. Indeed, Appellants labelled their initial motion for extension an "*Opposed* Motion to Stay or Extend Deadlines" and stated in the motion that the government "has noted that it is opposed to this motion." App. 164 (emphasis added). Perhaps even more significantly, the district court's order granting Appellants' first motion for extension expressly referred to the motion as an "*Opposed* Motion to Stay Proceedings and Deadlines." App. 176 (emphasis added). Although Appellants now insist that their motion in fact went unopposed, absent any record evidence to support their contention, we decline to ignore the clear language in the district court's order indicating that the contrary was true.

Appellants also argue that an equitable exception—the so-called unique circumstances doctrine—permits us to excuse the

---

[5] Notably, Appellants do not challenge the *adequacy* of the government's opposition to their motion to stay or extend deadlines. *Cf. Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam) (holding that the government forfeited application of a claim-processing rule because its opposition did not invoke that rule). They argue only that the government did not oppose the motion at all, a contention we reject.

10

untimeliness of their Rule 59(e) motion. The unique circumstances doctrine permits a court to excuse the untimely filing of a motion or notice of appeal if the untimeliness is caused by the filer's reliance on an erroneous lower court decision. *See Mobley*, 806 F.3d at 577. But the unique circumstances doctrine is a "sharply honed" equitable exception. *Carlisle v. United States*, 517 U.S. 416, 435 (1996) (Ginsburg, J., concurring). Given Appellants' prolonged inaction and failure to adhere to timing rules and other procedural requirements, we decline to apply the doctrine in this case.

In sum, Appellants' Rule 59(e) motion was untimely and, as a result, so was its notice of appeal, at least with respect to the district court's June 3 order striking Appellants' putative claims and entering default judgment. Further, although the notice of appeal *was* timely with respect to the district court's order denying Appellants' Rule 59(e) motion, the court did not abuse its discretion in denying the motion. The motion was not only untimely but also presented arguments that either were or could have been raised before judgment was entered. *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008). Accordingly, we affirm the district court's denial of Appellants' Rule 59(e) motion and dismiss the remainder of the appeal for lack of jurisdiction.

*It is so ordered.*